United States v. Jim, this is 18-21-44, and we'll hear from the appellant. Thank you, Judge Bachrach, and may it please the Court, Counsel, Shira Keevel, Assistant Federal Public Defender for Defendant Appellant Derek Jim. This appeal raises several questions about the substantive reasonableness of a life sentence for a man convicted at trial of raping one woman on a single night, but who has no other history of violence or predatory behavior. Although the guidelines recommended a life sentence, the District Court itself specifically found that 30 years or even less would be sufficient to fulfill the goals of sentencing, the persimmony principle. He found that the first sentencing, right? Your Honor, he found it at the second sentencing, too. If you look at the transcript, Volume 3 at 97, he says, we certainly want a sentence that promotes respect for the law, that provides just punishment, that affords adequate deterrence. But I think that any sort of sentence that we're talking about on the specific and general level is going to provide those. Now with regard to those three sentencing objectives, that's one of the, collectively, one of the 3553A factors, correct? But there are six other factors, right, under 3553A? Yes, Your Honor, there are many factors for the court to consider. With regard to the persimmony principle, the District Court was saying that a sentence of 30 years would satisfy one of the seven criteria under 3553A, right? And Your Honor, I believe that the persimmony principle is A2, so it's only a certain number of the factors. So what this court has said in explaining the persimmony principle, I think Martinez, Berrigan, and Conlin, is this court has said, you consider all of the things. You consider the guidelines first and foremost. You also consider the facts of the case. You consider the history and characteristics of the offender. But those things are not part of the persimmony principle. Those are sort of the factual inputs for the District Court. The persimmony principle is what's set out at the top of 3553, which says, sufficient but no greater than necessary to fulfill the goals that are in B2. And so, excuse me, A2. So if you look in that, this is most of the persimmony principle. It doesn't specifically talk about, that quote does not talk about avoiding unwarranted sentencing. Excuse me, that's, I'm sorry. This one doesn't talk about making sure that we provide the adequate penological treatment. But the District Court had found at the original sentencing hearing that he could do that at a term of supervised release. And he didn't make a contrary finding at the second sentencing hearing. What the District Court was focused on at the second sentencing hearing was this very small change to the guidelines. Now, why, to follow up on Judge Seymour's question, why does what the District Court said at the first sentencing, why does it matter? Your Honor, I think the District Court very much thought that it mattered. The District Court went through both at the sentencing hearing and then 18 months later when it issued its order and went through all of its findings at the original sentencing hearing very specifically. I think that that's one reason. And one is that we have to look at this record as a whole. And that is part of this record. The District Court made findings at the original sentencing hearing. He did a lot of comparison at the resentencing. One of the things I think that's most important of the comparisons he made is that he said at the resentencing, and this is from the order issued supporting the judgment, that the facts and factors that were driving the sentence were, and I would like to quote, the brutality of Jim's crime and his lying. He said those have not changed. So even though the guidelines hadn't changed, but the use of those factors had changed. He thought those factors were included in the underlying sentence of the defendant, and he did not add the two points for harm to the victim. Our court reversed that decision, so something had changed. He had to add two more points, and he had to consider those facts in sentencing. He did consider those facts in sentencing in a different fashion. And, Your Honor, I'm not sure if he considered them in a different fashion. Obviously, the guidelines changed, and what this court said during the original appeal was we need to be looking at both the actions of Mr. Jim and then also the impact on the victim, and that's why this isn't double counting, and yes, you should add these offense levels. The District Court said, okay, I'll look at those, but he had looked at those underlying facts. He'd taken them into very serious consideration at the original sentencing hearing. And then the guideline changed. Yes, Your Honor, but again, the life sentence guideline from the resentencing, life was part of the original guideline range at the original sentencing hearing. The government requested a life sentence at the original sentencing hearing. And the government, I mean, and the District Court gave the low part of the guideline sentence. That's correct, Your Honor. There was no low part when he resentenced. It was only lifetime. That's correct, Your Honor. And your client had gone up, supposed to have gone up two points on the offense level, and he only went up one because he was at the top. That's correct, Your Honor. And when a defendant shows that the court calculated the starting point wrong, we typically say that's a procedural error and it's got to go back for resentencing. That's because both this court and the Supreme Court has emphasized that the analysis of a proper sentence has to start at the correct guideline range. The first sentence did not, and the slate is wiped clean. And we start again looking at the sentence when the recommended sentence was life. And, Your Honor, we definitely remand from this court, this court does, anytime there's an error calculating the guidelines because it is very important to start with the correctly calculated range. One of the things that the District Court did wrong here is the District Court may as well not have calculated the guideline range at the beginning of the sentencing because the District Court was so hung up on the idea of I want to give a guideline sentence without consideration of what that guideline sentence was that it on some level didn't matter to him what the guideline calculation was. And that's a problem. What do you rely on for that? I don't read at all the transcript as saying the court didn't care what the guideline sentence was. I mean, the court was very concerned with providing a sentence that was consistent with the recommended guideline sentence for uniformity, for the whole purpose of the guidelines. And Your Honor, with the first part of your question, I get that because he repeatedly says a guideline sentence, a guideline sentence when he's performing the rest of the analysis under 3553. When he does that, he's not saying this is a life sentence that the guideline is recommending. This means this person will die in prison. This is a decade longer, maybe more than the 30-year sentence I gave before. And this person will die in prison, even though I previously found that this was a person who really would not pose a danger to society if I let him out when he was in his 50s. He doesn't grapple with that and say how it is that suddenly that's not true anymore, that suddenly the simple fact that the guideline changed means that this is a person who will now die in prison, and that that is no greater than necessary to fulfill the goals of sentencing. But in terms of uniformity, Your Honor, I think I addressed this in depth in my brief. This really is an outlier sentence. There are not a lot of rape cases that go to trial in federal courts, obviously, because there's not a lot of jurisdiction. You know, the cases that you rely on in your brief, almost all of them are easily distinguishable. Is there any case that you cite where the guideline sentence was life in prison? Your Honor, I don't know the answer to that question. Well, I think the answer is no, because there's not a single one of them where when you calculated all of the sentence enhancement points under the guidelines, the person was facing a life sentence. You can't do that. You can't pull out a case that doesn't have the same facts and say that it proves that this is not consistent. And Your Honor, I actually think that this is one of the reasons that following the guidelines is not a way to promote consistency when you have so few similar cases that are in the federal system. Well, that suggests to me more reason to follow the guidelines. You can't just look at a body of cases and figure out how people are normally sentenced for this type of crime. And so you rely on the body that was assigned the role to figure out what the appropriate sentence is in this situation. And Your Honor, I think that, again, in most situations where there is a large amount of input both that went in, when the Supreme Court said that the guidelines in certain cases can be used as sort of a proxy for avoiding sentencing disparities, was doing that in the context of a drug case. That's a situation where, as the Supreme Court noted, there were thousands of cases that were used by the Guidelines Commission as inputs. There's many, many cases going through the system now, and we want to avoid national disparity. The problem that we have here is there are so few cases. It's very hard to find them. I don't, unfortunately, have exact statistics, but it does look like maybe one or two of these cases are going to trial a year. It's very hard to promote uniformity in that situation when you follow the guidelines. The guidelines are really... You go ahead. I have a question, but I want you to finish. The guidelines are really created for situations where there is a lot of data input, and so it can really promote uniformity. It's a philosophical argument with, and you put it very, very well today and in your brief, and I think in the case you're referring to is Gall, and, I mean, there's been a lot of criticism of the guidelines. It's not empirically based, but, you know, we are not the Supreme Court of the United States, and so what I think you're asking us to do is to say, distinguish Gall, despite the broad language in Gall that the Supreme Court specifically said that the district court necessarily gave significant weight and consideration to the need to avoid unwarranted disparities by applying the applicable guideline range, and you're asking us to say, no, the Supreme Court didn't really mean what it said in Gall because that particular guideline was empirically based. This one, there are very few cases that go to trial. I don't know that I saw any empirical proof of that, but it's probably true, but how can we say, okay, we're not going to apply Gall because we think the Supreme Court really just was not giving due recognition to the fact that there are some guidelines that are empirically based. There are some cases that infrequently go to trial, and so don't apply Gall, even though that's the Supreme Court. That's a whole thing. And, Your Honor, I'm not asking for this to be the sole reason that this Court invalidates this sentence. I think that it provides considerable context to the Court to show the Court that really a life sentence here is an outlier sentence, to show that the guidelines, yes, there are not cases that I cited, I don't believe, where there was a life sentence and then a downward variance, but they were also calculated differently than how this district court would have calculated them. There are clear abductions where no abduction enhancement was added, clear obstruction where no obstruction enhancement was added. And so... But those are totally different cases. What's our standard of review here? The standard of review here, Your Honor, is abuse of discretion, but again, the abuse of discretion wasn't in doing what Gall said was okay. The abuse of discretion was in finding that a lower sentence was sufficient, but then saying I'm going to follow the guidelines anyway. Well, but there were different factors he was weighing, because he had to add those two points and was told they were considered separately from the underlying sentence. Plus, he had all these reasons, which you're ignoring, for raising his offense level, including the fact that he perjured himself in court. All of those things add in. And the change between when we reversed the first time and when the district court reconsidered it was he was required to consider harm to the victim separately, which he hadn't done earlier. And, Your Honor, he had not done it with regard to the guideline calculation, but the court had very certainly considered the harm to the victim. He had just heard... He thought it was included in the underlying sentence, so... But then he specifically said, Your Honor, although I'm not adding these offense levels, I am considering the impact of this on you. This was a particularly brutal crime. This had physical impact, emotional impact. It was, I think he said... But it's not impacting the sentence. He said... That's right, Your Honor. I think that's extremely important. It's not only that it wasn't enough to add an additional offense level in the court's mind. The court didn't think that it was enough to go a day above the bottom of the guideline range, because he just didn't think that those facts particularly distinguished it from other rape cases. So I think that that is an important finding, but that's a finding that supports Mr. Jim's point. The district court here, again, was being very driven by the guidelines to the exclusion of his own findings about the parsimony principle and the purposes of sentencing. And may I reserve the remainder of my time? Sure. Thank you. May it please the court. Jennifer Rizzoni on behalf of the United States. Judge Seymour, you touched on the first point I was going to make, which I know this court is well aware. But the standard of review in this case is abuse of discretion. And a sentence within guidelines is going to be presumptively reasonable. And the only way that this court can find that a sentence is unreasonable is if it finds that the sentence was arbitrary, capricious, whimsical, or manifestly unreasonable. I would submit to you today that the correctly calculated guideline sentence was reasonable in this case. As you just heard, the defendant claims that there was no change between the first and second sentencing. Let me take you back to the original plea. What was the sentence that the government agreed to in that plea agreement? I believe it was 151 to 188 months, Your Honor. And so at that point, apparently, the government thought that was an appropriate sentence for this crime. At that point, Your Honor, that's also taking into account, of course, acceptance of responsibility, the time and costs associated with the government's having to take the case to trial, and particularly the harm that it might do to a victim who has to relive the horror of the rape that she endured. So between the 166 to 180? Yeah, 156, I believe, Your Honor. As low as 156 to life in prison because he withdrew from his plea agreement and went to trial. I mean, doesn't that sound a little bit like a trial penalty, a rather harsh trial penalty? Your Honor, I'll start with the fact that that was an 11C1C agreement that it wasn't even clear that the court would have necessarily accepted. So that was an agreement that the government provided based on the factors that I just gave to you that was not necessarily accepted by the court. And all those factors have to do with the fact that he wasn't going to go to trial? Correct, correct. So the government, after he decided to go to trial, went from being happy with a sentence of 156 months to pushing for life in prison? It was not a trial tax, Your Honor. I know that's what you're getting at. This was the situation where we went to trial, and then the defendant got on the stand, and he lied. He perjured himself and didn't show any remorse for what had happened. So it wasn't a trial tax. It was a penalty for getting on the stand and lying under oath. So there was that as well, as well as everything else that we just discussed in terms of the reasons that you would offer a plea that is that low and then going to trial and everything that goes into a trial on behalf of the government. But it was not a trial tax. And again, it's not even clear that the court would have accepted that. Define what a trial tax is. That's a good question. Well, it would be penalizing, essentially, a defendant for going to trial. But here, his correctly calculated guideline range was life in prison. So the government didn't decide that that was going to be the… Well, the government has a lot of influence over a sentence depending on how it's charged. And obviously, their cross appeal to us added two points, which is what raised him to the life sentence possibility. That is true. So, I mean, you can see why a defendant might feel like, in fact, he's being punished for going to trial here when the original agreement was 156 months.  But I think there are legitimate and reasonable reasons that the sentence went up to life in prison outside of the government's control. Like I said, I believe that the guidelines came out to be what they came out to be. And the district court, again, may or may not have accepted the agreement as it was set forth by the government. So it may have been that the district court decided and rejected that plea, and we would have had to go back to the drawing board. Going back to what we were just… Before your question, the defendant is claiming that there was no change between the first and second sentencing. Judge Seymour, you pointed out that there actually was a change. And here, of course, we went from a guideline range of 360 months to life to life in prison. So that was one change. Additionally, the court looked… And I think this is really important. The court looked a lot more closely at the severity of the injuries when it assessed whether or not to give those two points. In the district court, not only the severity of the offense, but specifically took into account a belief that your adversary says is just a factual mistake, and it does appear to me to be a factual mistake, that Mr. Jim had not taken steps to address his alcohol problem. That's just factually incorrect, isn't it? Your Honor, I would have to say that the record is ambiguous on that point, because I've gone back and tried to read through what he was trying to say, and I think it can be read that the judge was looking at the fact that he had two prior DWIs prior to the incident in this case, and then did nothing to address his alcohol issues before the rape. Now, I'm not disputing the fact that it seems that after the crime in this case, he did some things to try to address his alcohol issues. So the ambiguity is if he said has taken steps, you would agree that it's a factual mistake. Your argument about ambiguity is that he used the past perfect. You're exactly right. I read a fairly thin read to base a life sentence on whether or not he was using the past perfect tense of the verb take. I'm going to have to answer your question. I'm going to step back for a moment and just say that this factual issue, this factual error that the defendant raises is a procedural issue, and if they had an issue with it, that should have been raised if there was a factual error at the district court level. That being said, it's ambiguous as far as the government is concerned. The argument can be made that he was taking into account the fact that he hadn't addressed these alcohol issues prior to the rape, that he was extremely intoxicated the night of the rape, and that the court found not that it enhanced the sentence, not that you can But it didn't counsel for a variance either way. And to move even further, that was just one aspect of the entire sentencing scheme that the court looked at. So let's accept for a moment that there was a mistake there. We go back to the fact that there were these extreme injuries that Judge Ebell says, we only apply the two points in the extreme case, the case that's outside of the normal realm of what occurs to someone when they're sexually assaulted. And Judge Browning went through, and we outlined on pages 9 and 10 of our brief, exactly all of the things that had happened here and what he thought were extreme circumstances warranting the two points. Can I, and I don't know that I disagree with really anything that you just said, but can I tell you what sort of the issue that I'm struggling with is you started your argument And it's certainly correct in answer to Judge Seymour's question that the standard is abusive discretion. But one of the reasons that I think our court, and I think every other court, including the Supreme Court, recognizes the applicability of the abusive discretion standard is that we presume that the district court is not going to commit a legal misstep in exercising his or her discretion. And if the district court here did make a factual mistake with regard to a mistaken belief that Mr. Jim had not taken steps to correct his alcoholism, then we are giving a post hoc justification under the forgiving standard of the abusive discretion standard of review, ignoring the elephant in the room, and that is that the district court exercised his discretion based on a factual mistake. And if the judge had not made a factual mistake, we really don't know whether or not the judge would have arrived at the same calculus of the intermix of all of these factors in the same fashion. This mistake may have driven a different calculus. Your Honor, well, I'll go back to the position of the government that I don't necessarily think that a mistake was made. Yes, I understand that you may think that it's a thin reading, that it could be ambiguous, but the position of the government is that it is ambiguous, and it can be read the way in which the government set forth in its brief. Well, the facts are, as I understand them, that Mr. Jim had been sober for about five years at the resentencing. Is that... At the resentencing? Okay. Yes, I believe that is true. Okay. I mean, isn't that a... I mean, wouldn't that... The ambiguity here... It would be odd, wouldn't it, for the sentencing court to say you didn't do anything to address your alcohol problem and not note that, of course, I understand after the rape you've been sober for five years. I mean, shouldn't that weigh in there somewhere? Well, except for the fact that I believe that Mr. Jim was in prison that entire time, so he probably wasn't able to... You probably wouldn't be surprised that we see a lot of cases where people are in prison and they're not clean and sober. That is probably also a true statement, Your Honor. However, I'm just going to stand on the fact that I think that the district court statement can be read both ways, and that it is ambiguous, and that if you take into account the entirety of the sentencing and what the court observed, it is a reasonable sentence under the circumstances. It's not arbitrary. He didn't just make these things up. It wasn't capricious. It wasn't something he whimsically came up with. This was based on a guideline sentence with guidance from this court, and he found that a variance was not appropriate under the circumstances. Don't we have to remand this case anyway? You concede we have to remand to clarify the condition of supervised release. We could ask the judge. Well, Your Honor, you're right. We do have to remand it on the supervised release issue because he did say that he wouldn't include one of the conditions that he did include in the final judgment. But we ask that the case be remanded for that sole purpose of removing that one condition from the judgment itself. I don't think that an entire resentencing is necessary under the circumstances. Your Honor, looking at this case as a whole, looking at the sentencing in its entirety, Judge Browning was very thoughtful in his analysis in addressing all of the 3553A factors and taking into account the new guideline range and the guidance from this court about how he should take into account the injuries that were significant in this case. This was a brutal crime, and despite the fact that Mr. Jim may not have had any violent crimes in his past, the brutality of this crime caused the sentencing guideline range to be life in prison. And Judge Browning accurately and appropriately analyzed everything about Mr. Jim and found that a guideline sentence was appropriate. We would ask that you affirm the sentence in this case, remand on the one issue, Judge Seymour, that we have conceded. And unless you have any further questions, I will be seated. Thank you. Thank you. Mr. Jim, as far as we know, was sober for about six years before this crime happened as well. He did alcohol treatment as required by the New Mexico state courts. The government did not argue procedural reasonableness in their brief, and moreover, in this court in Barnes said that reliance on facts that would make a decision out of bounds is also a substantive reasonableness issue. Relying on false facts would be a substantive reasonableness issue. It would be an abuse of discretion and undermine the presumption that a within-guideline sentence was reasonable in this case. All right. Thank you, counsel. This matter will be submitted.